| | |
|---|---|
| **LAW OFFICES OF NOLAN KLEIN, P.A.** | ATTORNEYS & COUNSELORS |

**112 W. 34TH STREET, SUITE 1800**
**NEW YORK, NY 10120**
**PH: (646) 560-3230**

**5550 GLADES ROAD, SUITE 500**
**BOCA RATON, FL 33431**
**PH: (954) 745-0588**

www.nklegal.com                                                                                Nolan Klein, Esq.
                                                                                                klein@nklegal.com

March 24, 2023

**VIA ECF**
Honorable Taryn A. Merkl
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

          Re:    **_Reyes, et. al v. JJS Diner Corp., et al._**
                 **_EDNY Case No.: 1:22-cv-06220-LDH-TAM_**

Dear Judge Merkl:

      Plaintiff, Alejandro Reyes ("Plaintiff") and Defendants, JJS Diner Corp. d/b/a The Dinerbar ("JJS Diner") and Spiro Gatanas (collectively "Defendants") respectfully request that Your Honor approve the settlement agreement reached in this matter, pursuant to _Cheeks v. Freeport Pancake House_, 796 F. 3d 199 (2d Cir. 2015). A copy of the executed settlement agreement (the "Agreement") is annexed herein as **Exhibit A**.

## Settlement Amount

      The Agreement resolves all claims brought under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), by payment to Plaintiff in the amount of $25,000.00. This settlement was reach through protracted arm's length negotiation between experiences legal counsel. As part of this motion, Plaintiff's counsel requests approval of an award of $8,333.00 in attorney's fees and costs, which is one third of the settlement amount. For the reasons outlined below, the Court should approve the $25,000.00 settlement in this case as a fair and reasonable compromise of the claims against Defendants in this case.

## Factual Background

      On October 14, 2022, Plaintiff, Alejandro Reyes, commenced this action, alleging that Defendants failed to pay all due overtime wages in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), as well as failure to provide written notices required by the Wage Theft Prevention Act ("WTPA"). _D.E. 1_. Specifically, Plaintiff alleged that he was employed as a chef, with a salary of $70,000.00 per year, within the Defendants' restaurant, but that he was not paid a premium for hours worked over 40 in a workweek, was not paid "spread

Honorable Taryn A. Merkl
March 24, 2023
Page 2

of hours" when he worked 10 hours or more in a workday and was not provided documentation required by the WTPA.

Defendants filed their answer and affirmative defenses on December 19, 2022. *D.E. 8*. Defendants have asserted multiple affirmative defenses, which they assert to be dispositive in this case. First, Defendants assert the Plaintiff was an executive chef who managed and was in charge of the kitchen, including other kitchen staff, and that this fact places him within the ambit of the executive or managerial exemption. Defendants also claim that because Plaintiff was trained to be a chef and had some degree of latitude with respect to the dishes produced by the kitchen, he was a creative professional. Either of these exemptions would deprive Plaintiff of the right to recover an overtime premium. Defendants assert that because Plaintiff was paid well in excess of minimum wage, and was not entitled to overtime, there has been no violation of the FLSA or NYLL in this case.

Over a protracted period, beginning in October 2022, counsel for the parties began their dialogue. Plaintiff's position was that notwithstanding his significant salary, he is still owed unpaid overtime premium, at an hourly rate calculated by using his salary; specifically, a premium of $11.22 for every overtime hour, multiplied by 25 alleged overtimes hours per week, multiplied by 150 weeks, for a total of $42,075.00 in unpaid overtime (exclusive of liquidated damages, etc.). Defendants countered that they intend to defend this matter vigorously, and that they consider Plaintiff to have been paid a large salary, to have had total control over the kitchen, and to therefore very clearly be an exempt employee.

Although Defendants continued to take the position that Plaintiff is not owed anything, all parties acknowledged that they face risks of not being able to prevail on some or all of their claims and/or defenses if this case were to proceed to trial. The parties therefore reached an agreement whereby Defendants will pay Plaintiff $25,000.00 to resolve this matter, inclusive of Plaintiff's legal fees and costs. *Exhibit "A."* The Agreement in this case contains a release by Plaintiff of all wage-related claims under the FLSA and NYLL in addition to a mutual general release of all other non-wage related causes of action, which is meant to bring finality to the relationship between Plaintiff and his former employer. *See* Agreement § 4.1 & 4.2. In addition, the parties included a mutual non-disparagement clause, which contains proper carveouts for "truthful statements" regarding the parties' experiences concerning this litigation.

As set forth more fully below, the settlement is fair, reasonable, and the product of arm's length negotiations at mediation. For these reasons and those set forth in further detail below, the settlement should be approved. Recovery of $25,000.00 is a substantial share of the amount Plaintiff is owed, particularly in a case wherein liability is vigorously contested. This clearly reflects a reasonable compromise between the parties' disputed positions in this matter.

### **Fairness of the Settlement Agreement**

Pursuant to *Cheeks*, "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court." *Cheeks*, 796 F.3d at 206; *see also Wolinsky v. Scholastic Inc.,* 900

Honorable Taryn A. Merkl
March 24, 2023
Page 3

F. Supp. 2d 332, 335 (S.D.N.Y. 2012). In evaluating the fairness of the agreement, the District Court may utilize the factors set forth by *Wolinsky,* 900 F. Supp. 2d 332, 335. Those factors are:

> (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotations omitted).

It is respectfully submitted that all *Wolinsky* factors require approval of the settlement agreement. As to the first factor, Plaintiff proposed net ultimate recovery (*after* deduction of legal fees) represents approximately 40% of his total alleged damages. *Chowdhury v. Brioni America, Inc.*, 2017 WL 5953171 at *2 (S.D.N.Y. 2017)(net settlement of 40% of FLSA plaintiffs' maximum recovery is reasonable); *Redwood v. Cassway Contracting Corp.*, 2017 WL 4764486 at *2 (S.D.N.Y. 2017) (net settlement of 29.1% of FLSA plaintiffs' maximum recovery is reasonable); *Beckert v. Ronirubinov*, 2015 WL 8773460, at *2 (S.D.N.Y. 2015) (approving a settlement constituting 25% of the maximum possible recovery). Even absent the significant litigation risks in this case (discussed further below), this clearly represents a fair and reasonable settlement. As to the second factor, this agreement resolves a *bona fide* dispute over genuinely contested issues, namely whether Plaintiff is exempt from overtime requirements in the first instance. These are contested issues which will require significant litigation, attorney time, and expense. Plaintiff and Defendants believe that is in their best interests to resolve on the current terms rather than to be subject to protracted and expensive additional litigation, including the burdens and risks thereof.

Next, as to the third factor, the parties face serious litigation risks as to both liability and damages. Plaintiff risks the possibility that he was exempt, and entitled to nothing, and Defendants risk having to pay more to Plaintiff than was agreed herein, as well as untold additional legal fees to their own counsel, and if Plaintiff prevails, to Plaintiff's counsel as well. As to the fourth factor and fifth factor, the arm's length nature of the negotiations all weigh heavily in favor of *Cheeks* approval. *See Meigel v. Flowers of the World, NYC, Inc.*, 2012 WL 70324, at *1 (S.D.N.Y. Jan. 9, 2012) ("[T]ypically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement"); *Hernandez v. C-Penn Foods Inc.*, 2011 U.S. Dist. LEXIS 144798, at *2 (S.D.N.Y. Dec. 13, 2011) ("[G]iven the disputed issues of fact relating to Plaintiff's wage claims and the fact that the settlement was reached pursuant to arm's length negotiations, the Court finds that the settlement agreed to in this action is fair and reasonable.").

Lastly, the mutual general release and mutual non-disparagement clauses in this Agreement are proper under *Cheeks*. Parties often settle a "wage-and-hour case hoping to achieve a resolution

Honorable Taryn A. Merkl
March 24, 2023
Page 4

of all claims, including any other claims that they may have against each other (whether pled or unpled in the complaint or in any counterclaims) so that they do not have to litigate against each other in the future." *Souza v. 65 St. Marks Bistro*, 2015 WL 7271747, at *5 (S.D.N.Y. 2015). The benefit of mutual general releases is that they "operate as a walk away provision" by "permit[ting] each side to terminate their relationship entirely free from fear that the other will re-engage in the form of a lawsuit." *Strauss v. Little Fish Corporation*, 2020 WL 4041511, at *5 (S.D.N.Y. July 17, 2020). So long as the release is mutual, district courts have even approved general releases that waive unasserted, unknown claims. *See Weng v. T&W Restaurant, Inc.*, 2016 WL 3566849, at *5 (S.D.N.Y. June 22, 2016) (finding "general release" "releasing plaintiffs and defendants from liability for most claims each *might* have against the other" is "not unfair"); *Plizga v. Little Poland Restaurant, Inc.*, 2016 WL 9307474, at *6 (S.D.N.Y. July 18, 2016) (approving "broad but mutual" releases that release "all claims" "for any matter, cause or thing whatsoever").

"General releases are permissible in FLSA settlements where [1] plaintiff is no longer employed by defendants, [2] the releases were negotiated by competent counsel for both sides and [3] the releases are mutual." *Khan v. Young Adult Institute, Inc.*, 2018 WL 6250658, at *2 (S.D.N.Y. Nov. 29, 2018). Here, Plaintiff no longer works for the Defendants; the Agreement was negotiated by competent counsel for both parties, and the general releases are mutual. *See, e.g.*, *Snead v. Interim Healthcare of Rochester, Inc.*, 286 F. Supp. 3d 546, 556 (W.D.N.Y. Feb. 26, 2018) (finding "mutual general release provisions are a fair and reasonable outcome" where "Plaintiff is no longer an employee of Defendant"); *Plizga*, 2016 WL 9307474, at *6 (approving mutual general release where plaintiff who "no longer works for the defendants"); *Cionca v. Interactive Realty, LLC*, 2016 WL 3440554, at *4 (S.D.N.Y. June 10, 2016) (approving mutual general release where plaintiff "is no longer an employee of the defendants, reducing the danger that the release was obtained through improper job-related pressure"). For these reasons, the mutual general release should be approved.

Furthermore, courts in this Circuit have held that "not all non-disparagement clauses are *per se* objectionable." *Panganiban v. Medex Diagnostic and Treatment Center, LLC*, 2016 WL 927183, at *2 (E.D.N.Y. Mar. 7, 2016). A settlement agreement may incorporate a non-disparagement clause if it includes a carve-out for truthful statements about plaintiff's experience litigating his case. *Id.* In the words of one court, "overwhelming weight of authority has approved" non-disparagement clauses in FLSA cases where there is a "carve out for truthful statements." *See Payano v. 1652 Popham Associates, LLC*, 2019 WL 464231, at *4 (S.D.N.Y. Feb. 6, 2019) (collecting relevant authority). Here, the non-disparagement clause is mutual in addition to containing the carve outs necessitated by *Cheeks* review. *See Sicajan Diaz v. Pizza Napolitana, Inc.*, 2020 WL 8265766, at *3 (E.D.N.Y. Dec. 4, 2020) (approving mutual non-disparagement clause when it contained a carve out for truthful statements). For these reasons, the mutual non-disparagement clause should be approved.

Throughout the settlement negotiations, Defendants emphasized the importance of finality in this Agreement since Plaintiff is a former employee, and the mutual general release and mutual non-disparagement are required to serve that purpose from the Defendants' perspective.

Honorable Taryn A. Merkl
March 24, 2023
Page 5

## Attorney's Fees and Costs

As to amount, Plaintiff's attorney's fees in FLSA matters may be calculated as either (a) a percentage of recovery or (b) as the product of a reasonable hourly rate and the reasonable number of hours expended (the loadstar method). *Flores v. Food Express Rego Park, Inc.*, 2016 U.S. Dist. LEXIS 11351 at *6-7 (E.D.N.Y. 2016) *citing McDaniel v. City of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010)). As to the percentage of recovery method, "[i]n this Circuit, courts typically approve attorney's fees that range between 30 and 33[percent]." *Thornhill v. CVS Pharm., Inc.*, 2014 U.S. Dist. LEXIS 37007, *3 (S.D.N.Y. 2014); *Briggs v. DPV Transp., Inc.*, 2021 U.S. Dist. LEXIS 245830, *5 (S.D.N.Y. 2021)("Courts in the Second Circuit routinely award attorneys' fees in FLSA settlements of one-third of the total recovery"); *Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. 2013)(same).

Here, as permitted by the relevant retainer agreements, Plaintiff's counsel seeks 1/3 of the total recovered as a legal fee in this case, or $8,333.00. Plaintiff's counsel waives the right to recover anything additional as costs. Because a 1/3 contingency fee is "commonly approved" in this Circuit, Plaintiff respectfully requests that the contingency fee in this case also be approved as fair and reasonable.

## Conclusion

For the foregoing reasons, counsel for all parties jointly and respectfully request that the Court approve the parties' settlement agreement as fair and reasonable and dismiss this action with prejudice. *See Reyes v. Altamarea Group, LLC*, 2011 U.S. Dist. LEXIS 115984, at *14-*17 (S.D.N.Y. 2011).

Respectfully submitted,

*/s/ Nolan K. Klein*
Nolan K. Klein, Esq.

*/s/ Ian-Paul Poulos*
Ian-Paul A. Poulos, Esq.